May it please counsel for ESPN, may it please this Honorable Court, more than three years ago on April 7, 2001, ESPN produced an extravaganza called the Action Sports and Music Award Show in the city of Las Vegas. Evel Knievel, who had been a celebrity for some 40 years, was invited to attend and to participate, and he did so. When the show's curtain finally came down, he was asked to step away from the showroom and pose for a picture. He agreed to do it. With him was his wife, Crystal Knievel, 30 years younger than Evel, and a 21-year-old surfer from Hawaii. They asked Evel to stand between the two young ladies, and the picture was taken. After that, there was a gallery of pictures that were on the website of ESPN. Those pictures were displayed in Montana, and when brought to Evel Knievel's attention, he protested, they took the picture out. Here is the photograph that went around the world, the United States of America, and the state of Pardon me, Counselor, you said they took the picture out when he protested? They took the picture out when he protested? How long did it remain on? You have to get behind the microphone because we're recording your argument. Get behind the mic. Stay there. This is not a jury trial. Stay there. Behind the lectern. Yes. Thank you. The case was filed in the District Court of the Second Judicial District of the State of Montana. Mr. DeHood, you know, we know all the facts. We know the proceedings. There's only one issue in this case, isn't there? Sir, I'm sorry, I Yes, there is, Your Honor. And the issue in this case is, in our judgment, that Montana law must be followed, and Montana law allows a jury to determine whether or not this particular reference, and the use of this language, can be used against the defendant. Even assuming that's what Montana law says, isn't that an issue of procedure, which is governed by federal law in a federal court? No, it is not, Your Honor. In Montana, this is a substantive right that you have by the virtue of the Constitution of the State of Montana. It started in 1889, and then a new Constitution was enacted in 1972. And that very provision State that as follows, in all suits and prosecutions for libel or slander, the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the facts. That means that in Montana, under Montana law, no court can ever grant a demurrer, nor a motion for summary judgment, nor a non-suit, nor a judgment notwithstanding the verdict in a defamation case. True? Not quite, Your Honor, but it's very close to being true. And we had a definitive case in Montana in 1999 that answers the question that you posed to me by your recitation of certain judicial situations. That case, Your Honor, was the case of Hale v. The City of Billings, which we have cited. And the court there said, unless the evidence is so overwhelming that any other conclusion would be unreasonable, the issue of whether the statements were true or false is a determination for the jury alone to make. That's so in a slip-and-fall case. So that's no news. I mean, is the same rule Montana has to its defamation statutes that the full panoply of pretrial dispositive motions is available to a litigant? Right? It is available, Your Honor. All right. Now, secondly, even if it weren't, even if you're right about Montana saying every defamation case goes to a jury, does that make any difference when there's a First Amendment claim here? Well, Your Honor, every case doesn't go to a jury in Montana. The first issue— Every defamation case. The first threshold issue is whether or not it can reasonably be interpreted to mean that it's demeaning and falls within the libel statute that caused the person to be shunned and to be held an obloquy in his community. Now, in this particular case, Your Honor, the judge has agreed, our district judge, who's a cherished friend of mine and a very bright and intelligent individual, but everybody can miss one. And in our judgment, he missed one here because he stated in his decision, the court must accept all allegations of material fact as true. This is a motion to dismiss. So all of the material facts must be accepted as true. And what are the material facts? The material facts are set forth in our complaint. His Honor admits that they must all be accepted. We state in there, in paragraph four of our complaint, that the photograph was on the website. It had the language that was false and exposed the plaintiffs to hatred, contempt, ridicule, and obloquy. We state that it injured the reputation of Ivo Knievel. We state in our complaint, it was understood as charging that the plaintiffs had been guilty of immoral and improper behavior and to bring the plaintiffs into public disgrace and scandal. We then say that it's caused substantial damage to his economic position as a worldwide celebrity. We state that he has donated his time and established a reputation. And then we close with respect to the damages, that Ivo Knievel has been notified by several of those corporations. They do not want to continue with him as a personality connected with their product. Because the accusation contains the libelous and malicious photograph, which is the subject matter of this complaint. The court says we have to accept everything that's in the complaint as true on a motion to dismiss. If you accept all these allegations as the basic premise states, then there's no possible judicial reason for dismissing the case. It has always been the rule that on a motion to dismiss, you first have to accept the allegations of the complaint. Those are the allegations. What could have been done or should have been done? First of all, these words were drafted by an individual. The editors of ESPN, of course, have to necessarily approve those words. Couldn't they have said? And this, needless to say, is not humorous. Counsel for ESPN says, well, this is humor. This is not humor. And our reply brief points out that humor can also, if misused, be the basis for libel and slander. They could have used the words, evil can even prove that you're never too old to be a ladies man. You're never too old to be a Lothario. You're never too old to be a Casanova. They have to use the word pimp. Irrespective of the honorable district court judge's statement that pimp in this day and age can be a compliment, it is not a compliment in Montana. You've alleged that it's not a compliment to your corporate backers. You've alleged that because they read this, they stopped. That's right, Your Honor. So regardless whether in some people, to some people in Montana, it might be a compliment, if the allegations of the complainant to be taken as true, you've alleged special damage to your client. Yes, we have, Your Honor. In effect, Judge Malloy held that the First Amendment, the requirement of the First Amendment that trumps the Montana Constitution, right? Even though, even assuming everything you say is true about the protections afforded by the Montana Constitution, that under the First Amendment, there's no defamation here. Isn't that what Judge Malloy held? Because it's not reasonable that that statement is not reasonably capable of being taken as true and defamatory. Isn't that the essence of Judge Malloy's holding? Well, that is the essence of it, Your Honor. And I'm going to respond on two arguments. One, they don't identify Crystal Knievel as his wife. And needless to say, I think you could look at this picture, since it's in the Las Vegas setting, that this picture could depict two ladies of the night. I don't think there'd be any problem with that. Why would they want to do this type of thing? The argument that this conflicts with the First Amendment to the Constitution of the United States is specious at best. The Constitution of the State of Montana is totally in conformity with Amendment 1 of the United States Constitution. When it was crafted in 1972, the Constitutional Convention made absolutely certain that there was not going to be any conflict. I happened to be the chairman of the Bill of Rights Committee of that Constitutional Convention. And we made absolutely certain, if anything, we expanded upon that right. Under the Constitution of the United States of America, we still have libel and slander. Every guarantee under our Constitution has correlative rights and obligations. And there is an obligation not to misuse the right of free speech or the right of free press. And we submit under these circumstances there was a total misuse of that particular guarantee. And as a consequence, the libel and slander laws apply. And as we set forth in our reply brief, there are a number of federal cases in which libel and slander cases were pursued. If we follow the argument from the gentleman for ESPN that that means under federal law, under our United States Constitution, you can say whatever you want about an individual and there's no restriction upon free speech, I need not use the argument that we used in law school. You can't go into a crowded theater and holler fire. There are a number of things that you can't do. And one of the things that you can't do is take a man that's spent his life developing his career and living on endorsements because he's got the reputation as being the type of public-spirited citizen that would result in endorsements and then put a picture out like this and call him a pimp and then say, well, we pulled the picture. There's no damage. Well, there is damage. And if the allegations of our complaint — What you have to address is the district court's holding that on a motion to dismiss under 12b-6, statements that cannot reasonably be interpreted as stating actual facts cannot be defamatory. Now, do you dispute that no one in the world, no reasonable person could ever conceive that Evel Knievel is a pimp? Well, Your Honor, yes, it is reasonable to conceive that when you've got a picture like this and two young ladies that could pass as ladies of the night. And how about Crystal Knievel? She's a plaintiff before this court. She's not identified. What's the reference to her? As a prostitute? They do not have carte blanche, no matter how much money they make out of entertainment, to do whatever they want. There is a duty and an obligation in a moralistic society to recognize the rights of everyone and to recognize the status of everyone. And we have a complaint that says it was reasonably interpreted as such by certain corporations, and that allegation has to be accepted as true. And we're certainly in no position to say, well, those corporations were unreasonable in deciding that this defamed Evel Knievel and therefore took away his stature as an endorser of our product. Did Judge Malloy cite any source for his conclusion that no reasonable person could conclude that this fact is possible? No, Your Honor, he did not cite any source. As a matter of fact, in the footnote of his decision, he made this statement. What page are you on? It's on page 13 of the court's opinion. Go ahead. And his footnote reads as follows. As a threshold issue, the court must determine whether the term pimp is capable of holding the defamatory meaning ascribed to it by the plaintiffs. We're referring to the Cochran case, which, as we point out in our reply brief, is not analogous. The court concludes that the use of the word pimp is capable of the meaning prescribed by the plaintiffs, that Evel and Kristol Knievel were involved in criminal activity involving prostitution. Capable of having that meaning, that connotation? Well, to several corporations, it certainly had that meaning and that connotation. And once again, Your Honor, I submit to you the very basic principle of law, that on a motion to dismiss, all the well-pleaded allegations of a complaint must be taken as true, and there is absolutely no conflict with the First Amendment to the Constitution of the United States. Evel Knievel and Kristol Knievel are entitled to their day in court. Counsel for ESPN makes the comment, well, it was humorous. Evel and Kristol are entitled to a day in court before a jury of 12 good and true men and women, and if they laugh, they win their case. And if they don't laugh, then Evel and Kristol are entitled to the redress that the law provides for them in this type of unfortunate situation. And I thank you very much, not only for listening to me, but for the honor and the privilege of scheduling this case for oral argument. Thank you very much. All right, thank you. Let's hear from the defendant. You have nothing to rebut, right? Good morning, Your Honors. Counsel, may it please the Court, my name is Nathan Siegel for ESPN. This case raises, I believe, only one question, although counsel has addressed two. Number one, does a libel plaintiff in Montana have an automatic right to a jury trial, irrespective of the facts of this or any other case? And number two, although counsel doesn't actually raise it in its opening brief, in their reply brief, they've argued about essentially the merits of the district court's finding about the actionability of this photo and caption. I'll address the first issue first, which seems to be the principal issue they've raised. As I understand it, counsel argues that this particular provision of the Montana Constitution gives the jury control over the law as well as the facts, and therefore, in essence, there is no such thing as a question of law and defamation in the classic sense, i.e., an issue for the court. This contention is wrong for two principal reasons. Number one, it's wrong because the grounds for the district court's decision were based on the First Amendment, and therefore, federal law clearly governs. But number two, there is no conflict anyway because the Montana Constitution simply doesn't say what the appellants contend that it says. The Montana Supreme Court has repeatedly addressed the very argument they're making here. It's addressed it again and again since at least 1928, and of course, the construction of that court is controlling here. And that court has repeatedly said that questions of law and defamation cases are decided by courts, and it's repeatedly said since at least 1943 that issues of threshold meeting are issues of law and defamation cases. I won't spend too much time on that issue.  Thank you, Your Honor. I think the real issue is, you know, whether, as Judge Malloy concluded, this photograph and the caption is incapable of a defamatory meeting. You know, not that maybe a lot of people, maybe even most people might take it as humorous or complimentary, but whether it's incapable. Isn't that what you have to conclude, that it's incapable of a defamatory meeting? Well, I think the question more precisely would be would a reasonable person understand it as stating actual facts about the plaintiff. That's a little bit different. What reasonable person? We have here a situation where ESPN pitches the show to an audience. Is it anybody who they can anticipate is a member of that audience? Is that your scope of who is reasonable? Or is it anyone who sees the photograph? My question is, if the publisher targets an audience, is the First Amendment question, would anybody in that reasonably targeted audience conceive of this as true? Or is someone who sees it who may not be part of that targeted audience? For example, I can see here that this targeted audience is to a young group, a hip group, a group that uses slang. Right. And maybe the people who allegedly stopped using Evel Knievel are a series of dowdy bourgeois corporate sticks in the mud. Right? Now, given that possibility, is it a question of the publisher is exempt if he targets the right people and all of them would not reasonably believe this to be true? Or suppose the dart hits one of those dowdy bourgeois people. Is he liable then? On the facts of this case, Your Honor, I would argue that it doesn't matter. As a general rule ---- Let me ask you then ---- Yes. If it doesn't matter, I have here the decision of the court in Judge Malloy's court. At page two and three, he goes through all the photographs, two, three, and four. Yes. And they say some racy things about other people. Right? They talk about Tara Dakides. I hope I pronounced that correctly. Dakides, looking sexy, although we know she's hardcore. That may have a cult meaning to some people. Right? They show Shannon Dunn looking easy to be cheesy. Right? They look. They say David Mara and his gal know that he's the best at what they don't say. Take a moment, counsel. Take a look at that. Do they say that any other person of those 16 slides is a criminal? It depends on how you read it, Your Honor. No, no, no. Do any of them get called thieves, burglars, murderers, sexual molesters? Is the word used as to anyone else that he's guilty of a crime? Because I look at pimp in the dictionary, and it doesn't say anything about being anything other than a procurer for a prostitute. That is a criminal term. Now, maybe my dictionary is not as hip and as modern as others. But isn't that the fact that you didn't call your client? Not you. I'm sorry. Your client never called anyone else a term reasonably capable of being interpreted as labeling a criminal by the dowdy bourgeois corporate world. Why is that? Why did they pick out evil Knievel to use a criminal adjective? Oh, pardon me. Well, I don't know why the person made any of the decisions. But isn't that the fact that none of the others were called a criminal? Well, the word pimp, I don't believe that evil Knievel was called a criminal, and that's the issue. He's called a pimp. Is not pimping a criminal offense? In the abstract, it can be. But when one looks at this photo in this caption, in the context of all the others. Was anyone else in that context called a criminal? Arguably so. It depends on how you would read the captions. Argue. Argue from the facts. Well, for example, the picture of the woman. Is that a criminal? The picture of the woman, the last one, who's shown, quote, unquote, looks seductively and is shown, quote, posing for Papa. Somebody could argue that that implies that she was, in fact, in the process of trying to seduce her father and soliciting the crime of incest. But she's described as a close second for hottie of the year award. Is hottie a crime? No, I think we're talking about. I'm talking about the photo shows a woman in a black tank top with a caption posed for Papa. It's been it's. Yeah, that's right. Exhibit posing for Papa. Well, if you were trying to seduce your father, it could arguably a crime. Yes, the issue is it would be incest. Right. Right. Exactly. Is posing for a father incest. If you were actually doing it as part of a process of trying to seduce a part of a process which includes sexual relations. Or sexual solicitation. Right. But posing for Papa. Could you could you see an indictment saying the first count we charge him for posing for Papa. Well, it depends on what posing meant in context. What I'm saying is this. You have not used a single noun or adjective which directly and explicitly criminal conduct as to any of the other 16 persons except evil Knievel, who you've called a pimp. Yes. Who? In the abstract. No, no, no. In the explicit, not the abstract. Well, I don't think that in the context in which the word pimp is used here, it could reasonably. In fact, Your Honor, the reason. But don't you agree with counsel that if the words of the complaint have to be taken as true. And if the words of the complaint show special damages that he's been cut off from corporate employ. Doesn't that imply, giving all reasonable intendance, that those corporate employees, employers were reasonable in doing so and reasonably believe that Knievel now has a second career. He's a pimp. Well, the complaint doesn't even allege that. But even if it did, the complaint doesn't allege that anybody thought that this picture accused evil Knievel of soliciting prostitution. No, it just says people saw the complaint. They thought it was defamatory and they didn't want to do business with it. Well, that could be. That could be well true. He hasn't alleged an evidentiary matter, which we shouldn't have to allege evidence. He's alleged ultimate facts and all the conclusions. Evil Knievel has been notified by several of these corporations that they do not want to continue with him as a personality connected with their product because of the accusation contained in the libelous and malicious photograph, which is the subject matter of the complaint. That adequately alleges that fact, doesn't it? Yes, Your Honor. But that's irrelevant to this inquiry for two reasons. Number one, there's no question that the threshold question of whether a allegedly defamatory publication states actual facts about somebody is a question of law for the court. The reasonable person standard is a standard that's employed by the court. And the court needs to make the threshold determination. And that's exactly what Judge Malloy did. And he did make the determination. That in a threshold matter, this is possible of a defamatory meaning, but in context, it isn't. That's right. My question to you is this. What sources – there was no evidence before Judge Malloy because there was a motion to dismiss on the complaint, right? What sources did Judge Malloy use to conclude that no reasonable person in the panoply of those who might have seen this could possibly conclude that the allegation, the statement made as to Knievel was true? What sources did he use except his own notions? Irreducible subjectivity. Anything else? Well, that is in essence what the issue of law is. The sources he used were not simply the picture in isolation. He used the context in which the picture occurred. He used the website. And his own notions of what that context was and what that context gave. Well, that is the correct inquiry. In a defamation case, and if one looks at the entire panoply of cases – If we don't think it's so unbelievable, then it's a question of law. We just disagree with them, right? In essence, that would be true, Your Honor. Yes, that's right. It is a threshold question of law. But the key part of the inquiry is context. And, of course, the broad context was before the district court. In general, the whole point of this area of law is we don't have defamation cases where we just get to throw up a picture in front of a jury and say, If you think it's funny, then I win. If you don't think it's funny, then the defendant wins. The whole point is that there needs to be some breathing room for attempted humor and for what people may arguably see as lampooning somebody, as insulting somebody, lampooning somebody, satirizing somebody. And the most reasonable construction, or from, I guess, the SPN's point of view, the most negative reasonable construction that somebody can understand this photo is that it's kind of poking fun at evil can evil in some ways. If reasonable people can disagree, maybe 90 percent of the people in America would laugh this off. But if 10 percent of America might take this seriously, doesn't that create a jury question? Not necessarily, Your Honor. I think it would depend in that case on the standard is really the average viewer of the material in question. So if you were talking about a student newspaper, you would look at students. It has to be no reasonable person in this context to take this to be defamatory. Isn't that the test? No, I believe it's no reasonable average viewer of this Web site would really be the correct standard. No reasonable average viewer? I don't know about that. No reasonable viewer of the likely audience for this Web site. Well, I think they're getting to take that Falwell case. Right. You know, that cartoon about about the accusation about the order plus type of interest with his mother. I mean, there's absolutely no one is going to believe that to be true. I don't think. I mean, it's almost inconceivable that anybody would, you know, harbor suspicion that that was true. That may be the case, although, of course. But you see, on this one, it's a lot closer. At least it's a lot closer question. And there are a lot of people, you know, who watch ESPN and who aren't sports. That's right. I mean, people are not just these dowdy bourgeois. You know, people are stuck in the hospital. They're lying laying in bed. You know, they can't do anything else but watch TV. And they're going to maybe all they can get is ESPN. But a lot of people are going to watch it who are not, you know, who don't speak the language of the Dictionary of American Slang. Right? Yes, Your Honor. So I think the question here comes down to in a close case, who should make the call, the judge or the jury? Well, ultimately, the court makes the call. In fact, this whole line of cases originated in a series of Supreme Court cases, including the Falwell cases, which all reversed jury verdicts. The Bressler case, which involved the issue of the word blackmail, again, a word with, in the abstract, clearly connotes criminal activity with the Supreme Court and the jury so found. But the Supreme Court said, no, you've got to look at the broader context. It's a First Amendment issue, not actionable. The letter carriers case, the word traitor, same thing. The problem is not with looking at a broad context. My question is whether the trial judge looks at a broad enough context, not simply the hip, possible, slangy viewers of ESPN that your client targeted this program for, but also the dowdy 10 percent. The question is not whether the broad context should be determined based on the intended audience. But our jurisprudence in Norse v. Henry Holt and Company says to determine whether the statement has a defamatory meaning, we interpret it from the standpoint of the average reader, not the average targeted viewer, the average reader. So now, what, again, what source did Judge Malloy use to say, I know how this plays out, but what source did he use to determine whether the statement has a defamatory  And how did he do this to the average reader other than his own subjective response? Well, there is no other source to use for this inquiry, because otherwise, by definition, you could never have a motion to dismiss in such cases. And clearly that's not the case. There are many. If you look at the whole panoply of cases from this Court, from the Supreme Court, they all involve the courts assessing the words at issue, the context of the words at issue, i.e., in which they appeared, et cetera. They don't involve 15 depositions where you sit people down and say, what did you think this word meant, what did you think this word meant, et cetera, et cetera, which would seem to be the only inquiry that that kind of thing could lead to. We contend, and I believe Judge Malloy said, that any reasonable person would understand that what's being attempted here is humor, that this is figurative speech. Let me just ask you some minor questions. As I understand this, this photograph only appeared on the Web site, not on public. That's right. Is that correct? Yes. And the only way one could get to this particular photograph was to click on EX, extreme Web site, whatever it's called. Yes. If one were to put in the name Evel Knievel in the address box in Google, for example, would this picture come up? No, not on its own. It wouldn't come up. The only way you could get, this was a photo gallery, and the photo gallery, ultimately you have to get into the photo gallery, and then each picture clicks after the other. You can't pull one of the photo gallery, one of the photos off the Web. How do we know that as a matter of fact? Because we did put that, we put what the Web site was and how it worked into the record, and under Van Buskirk versus CNN. In other cases, the plaintiff didn't dispute any of what we put in. In other words, we said, this is what was on the Web site, this is how it works. And because the Web site itself was put at issue by the complaint, this is an example of something where you clearly got some material that's put at issue by the complaint. The plaintiff doesn't dispute the authenticity of it, and, therefore, it's proper to consider it on a motion to dismiss. And that's really what this case was all about, that that judge correctly and was able to consider that context. And for some of the questions Your Honor raised, for example, if there were other pictures and photos, if this picture had appeared in the middle of a series of journalistic statements about people committing crimes, then it might be more reasonable to say, ah-ha, well, I guess they're really saying Evel Knievel committed a crime. Was there an issue that it was subsequently published in any other kind of publication? No, Your Honor. No, there's none at all. But the fact that this photo or caption appears in the middle of what we contend are obviously jokes, attempted humor, things that are poking fun at people that use lots of sexual innuendo, sexual slang, the kind of thing you would expect to find in an audience for teenagers, makes it far less reasonable to all of a sudden believe that at a national awards show that ESPN is contending that in front of It's a little bit like the Pring v. Penthouse case that we cited in our briefs where the court noted that that was a lampoon in Penthouse, which that was actually in a pornographic magazine where one might expect to see such things talked about literally more, where there was a lampoon portraying one of the contestants performing oral sex on somebody. When you say you put in the record how this website works and the fact that you have to scroll through these pictures and that was before Judge Malloy? Yes, it was. Did he scroll through these pictures? I don't know whether he did. He did, however, put that in the record. He said that that's the way it worked. He described it in his opinion. You must have presented it to him. Yes, we put it in the record. Whether he or his clerk actually went onto the website, I don't know. You gave us a CD of this limited website. Yes. You provide Judge Malloy with that same CD? Yes. There's nothing that we provided you that wasn't the same as what we provided for Judge Malloy. And those documents, although on a motion to dismiss, were offered without objection by the plaintiff? Yes, that's right, Your Honor. And because the whole point of this inquiry is you need to look at the broader context, I dare say you could take a random sample of any number of newspapers, magazines, video, portrayals, et cetera, sniff something out, bring it in here, and you could have what looks like a defamation case. But clearly that's not the correct standard. Again, the most important thing here is that it's a question of law as a threshold matter, and whether or not the fact that some actual damage has been alleged is irrelevant. There are lots of cases that allege actual damage. Things that people think are satirical, lampooning, et cetera, can cause damage. It might cause somebody not wanting to do business with somebody. Best supportive of your position? Well, I'd point to a couple of cases. I think on the facts, the Pring v. Penthouse case, the Dworkin v. Hustler case, those are cases of similar sort of sexual innuendo or sexual allegations are being made where the court said in context, it just doesn't make sense to understand it literally. And then secondly, it's really the whole panoply of Supreme Court and Ninth Circuit cases, the Cochran case that the judge cites, the Lieberman v. Figer case that this court decided last year, all of these cases that say the threshold issue is whether actual facts are stated. It's a question of law. There's a three-part totality of circumstances test. Two parts of that test are all about context. That's exactly what the district court here, and we submit that's the correct analysis. Thank you, Your Honors. Thank you, Mr. Siegel. Mr. DeLuca, do you reserve some time for rebuttal? May it please the Court, I did have rebuttal prepared, as good lawyers should. I was going to talk about the fact that this is not a Hustler magazine. It's not a Penthouse magazine. It's not Sopranos on TV. It's not some Profane Lakes comedy hour. It's a family-oriented network. No reason that they could ever justify doing such a thing. And you go through the 17 pictures, and there's only one. This picture did not appear on national television. Is that correct? It appeared in Montana on the national TV. Did it appear on national television? I'm not aware of it, Your Honor. It was on the website, the extreme website. That's correct. Correct? Which I understand is accessible by anyone. That's correct. So I have no further argument. I want to just close by saying this. It's quite obvious this Court has a masterful command of the fact and the briefs and the law and Eble and Crystal and Wade DeHood. For the opportunity and the privilege to appear here and argue their case, thank you all very much. All right. Thank you, Mr. DeHood. Thank you, Mr. Siegel. In this case, it's a ministerial decision. Mr. DeHood. And the panel will take a brief recess before returning for the balance of the calendar. All rise. This Court stands in recess.
judges: Tashima, Paez, Bea